# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 05-2483

_____

| | | |
|---|---|---|
| United States of America, | * | |
| | * | |
| Appellant, | * | |
| | * | |
| v. | * | Appeal from the United States |
| | * | District Court for the |
| Jack Leroy Goody, | * | Southern District of Iowa. |
| | * | |
| Appellee. | * | |

_____

Submitted: January 11, 2006
Filed: March 31, 2006 (Corrected 4/6/06)

_____

Before WOLLMAN, JOHN R. GIBSON, and ARNOLD, Circuit Judges.

_____

ARNOLD, Circuit Judge.

Jack Goody pleaded guilty to conspiring to manufacture and distribute methamphetamine, *see* 21 U.S.C. §§ 841(b)(1)(A)(viii), 846, and the district court sentenced him to 72 months' imprisonment. The United States appeals, contending that the sentence is unreasonable. We remand for resentencing.

Mr. Goody, along with several others, manufactured methamphetamine in a shed on his farm. Mr. Goody helped steal methamphetamine precursors and used methamphetamine that the conspiracy produced. Although most of the methamphetamine that the conspirators produced was for their personal use, some was sold to third parties. Mr. Goody hid both the lab and his drug use from his family, co-

workers, and community until a police search of the Goody farm revealed a room specially constructed for manufacturing methamphetamine in a shed one hundred yards from the Goody residence. In the room were large quantities of methamphetamine precursors and equipment for making the drug. Mr. Goody tested positive for methamphetamine use while he was awaiting trial, and he deceived his family about his involvement in the drug conspiracy even after pleading guilty to one count of conspiring to manufacture and distribute methamphetamine.

The offense of conviction carries a mandatory minimum sentence of ten years in prison, but by submitting to an interview with law enforcement officials in which he revealed all that he knew about the conspiracy, Mr. Goody became eligible for relief under the sentencing guidelines' so-called safety-valve provision, *see* U.S.S.G. § 5C1.2. This resulted in a reduction in his offense level from 37 to 35. *See* U.S.S.G. § 2D1.1(b)(7). Both the prosecution and defense agreed that the applicable advisory guideline range in these circumstances was 168 to 210 months' imprisonment. But the district judge sentenced Mr. Goody to 72 months in prison, which was less than half the sentence that the prosecution had requested and ten percent lower than what Mr. Goody himself had asked for.

The United States argues that the district judge inappropriately decided to sentence Mr. Goody below the range specified in the guidelines. When, as here, there is no challenge to the district court's calculation of the guideline range, we review its sentencing decision for reasonableness, taking into account the matters listed in 18 U.S.C. § 3553(a). The reasonableness standard is "akin to our traditional review for abuse of discretion." *United States v. Gatewood*, 438 F.3d 894, 896 (8th Cir. 2006). Either the decision to grant a variance from the guideline sentence or the extent of such a variance may cause a sentence to be unreasonable. *United States v. Mashek*, 406 F.3d 1012, 1017 (8th Cir. 2005). Because "[t]he Guidelines were fashioned taking the ... § 3553(a) factors into account and are the product of years of careful study," a decision to grant a § 3553(a) variance from the presumptively

reasonable guideline range must be justified by reference to circumstances identified in that section. *United States v. Claiborne*, No. 05-2198, 2006 WL 452899, *1 (8th Cir. Feb. 27, 2006). Additionally, we have held that absent exceptional facts, sentencing a defendant to a sentence dramatically lower than that recommended by the guidelines is an abuse of the district court's discretion. *Id.* at *2.

Here, the district court sentenced Mr. Goody to a term of imprisonment that was far outside the range that the sentencing guidelines recommended. We see nothing extraordinary or exceptional about Mr. Goody's situation. While he did accept responsibility for his conduct and provide information to law enforcement, he did not take part in controlled purchases, contribute to the investigation of other drug offenders, or assist the government in any way that endangered himself or his family. Given these circumstances, we think that the sentence is presumptively unreasonable.

In fashioning an appropriate sentence, a district court is allowed to consider "the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct." 18 U.S.C. § 3553(a)(6). The district court found that Mr. Goody's involvement in the conspiracy was roughly equivalent to that of another member of the conspiracy, Raymond Gordon, who received a 72-month sentence, and the court used this finding to justify giving Mr. Goody the same sentence.

We discern a number of relevant differences between Mr. Gordon's and Mr. Goody's circumstances. Mr. Gordon's sentence was based on a much smaller quantity of drugs and included a reduction for his being a minor participant in the conspiracy, a reduction that Mr. Goody did not receive. Mr. Goody's construction of a secret facility on his property for methamphetamine manufacture constituted a much larger contribution to the goals of the conspiracy than did Mr. Gordon's conduct. Unlike Mr. Goody, Mr. Gordon received a three-level reduction for acceptance of responsibility. The guideline range for Mr. Gordon was 97 to 121 months'

imprisonment, but the government filed a motion to reduce his sentence for substantial assistance under U.S.S.G. § 5K1.1 due to Mr. Gordon's cooperation against his co-defendants; pursuant to this motion, the court sentenced Mr. Gordon to 72 months' imprisonment. No similar motion was filed for Mr. Goody. Given the disparities in the quantity of drugs that each man was charged with, their relative levels of cooperation and acceptance of responsibility, and their varying contributions to the conspiracy, it was error for the district court to find that Mr. Gordon and Mr. Goody's circumstances were so similar that the interests of justice required them to receive identical sentences.

We decline Mr. Goody's invitation to consider statistics that indicate that the national average sentence for drug trafficking is 80 months. That figure was computed by using sentences for trafficking in all illicit drugs, and from the data that Mr. Goody presents, we are unable to conclude that his sentence exceeds that typically given for trafficking in methamphetamine.

For the aforementioned reasons, we vacate the judgment of the district court and remand for resentencing.

_____